FILED

03/01/2017

Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
January 24, 2017 Session

## MARYAM GHORASHI-BAJESTANI v. MASOUD BAJESTANI

### Appeal from the Chancery Court for Hamilton County
### No. 08-0098    Jeffrey M. Atherton, Chancellor

### No. E2016-00063-COA-R3-CV

This is the third appeal in a post-divorce case. It arises from Husband's petition to modify the requirement that he pay private school tuition for his children's elementary and secondary education, and Wife's petition to calculate Husband's income tax rate in order to determine the net amount to be paid to Wife out of Husband's deferred compensation for 2011, 2012, and 2013. Husband contends the trial court erred by holding that his obligation to pay private school tuition was not modifiable because it was a contractual obligation. He also contends the trial court incorrectly calculated the tax rates and erred by refusing to allow him to introduce expert proof of the proper method for this calculation. We have determined the trial court erred in ruling that Husband's obligation to pay private school tuition for elementary and secondary education was not modifiable. Therefore, we reverse and remand this issue with instructions for the trial court to determine whether a material change of circumstances has been established and, if so, whether to modify Husband's obligation to pay private elementary and secondary school tuition for the children. With regard to the tax rates for 2011, 2012, and 2013, Husband failed to introduce evidence at the hearing that pertained to the proper method to be used to determine the tax rates. After the court rendered its ruling, Husband filed a Tenn. R. Civ. P. 52.02 motion seeking permission to present expert proof on the tax rate issue in order to alter or amend the ruling. We find no error with the decision to not consider Husband's belated expert proof or the decision to deny the motion to alter or amend. We also affirm the trial court's calculation of the tax rates and Wife's share of Husband's deferred compensation for the years in question. As for Wife's challenge to the trial court's decision to impute income to her for the purpose of calculating child support and refusing to consider work-related care expenses she might incur, we affirm these decisions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Reversed in Part; and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Phillip C. Lawrence, Chattanooga, Tennessee, for the appellant, Masoud Bajestani.

John P. Konvalinka, Chattanooga, Tennessee, for the appellee, Maryam Ghorashi Bajestani.

## OPINION

Maryam Ghorashi-Bajestani ("Wife") and Masoud Bajestani ("Husband") were divorced in April 2009. The Final Decree of Divorce adopted the parties' permanent parenting plan, named Wife the primary residential parent, and ordered Husband to pay $3,200 per month in child support. In setting the amount of support, the court found that Wife was voluntarily unemployed and imputed to her an income of $72,000. The court also ordered Husband to pay the children's private school tuition and other expenses, pursuant to his agreement in the parenting plan "to pay private school expenses [through] 12th grade."

Further, the trial court divided the parties' marital assets, including Husband's deferred compensation from his employment with the Tennessee Valley Authority ("TVA"), which the court valued at $2.7 million. Specifically, Wife was awarded one-half of the TVA deferred compensation. The court indicated that if the transfer of any portion of Husband's deferred compensation resulted in a taxable event, each party would be responsible for one-half of the taxes.

Additionally, the trial court awarded Wife transitional alimony, alimony *in futuro*, and attorney's fees.

In the first appeal, we affirmed the imputation of income to Wife and the award of child support. *See Ghorashi-Bajestani v. Bajestani*, No. E2009-01585-COA-R3-CV, 2010 WL 3323743, at *1 (Tenn. Ct. App. Aug. 24, 2010) (hereinafter "*Bajestani I*"). We also affirmed the trial court's valuation and distribution of the parties' marital assets, including Husband's deferred compensation from TVA. The trial court's award of transitional alimony and attorney's fees was modified and the award of alimony *in futuro* was vacated.

Following the first appeal, Husband filed a petition to modify his child support obligations and the requirement to pay private school tuition because he had recently been terminated from his employment at TVA. Husband also sought instruction from the trial court regarding payment of Wife's portion of the deferred compensation distributions because he learned that TVA was going to deduct 35% of the gross distribution for estimated taxes. Thereafter, Wife filed a petition seeking to modify the

parenting plan on the basis that Husband had not exercised the full amount of his parenting time and an order of contempt for Husband's failure to pay his child support and alimony obligations on time.

A hearing was held on these issues, during which Wife argued that she had been shortchanged in the distribution of Husband's deferred compensation, as 35% of the disbursement was withheld for estimated taxes before Wife was given her portion. Wife asserted that, because Husband's overall tax rate per his federal tax return was less than 35%, Husband had received a greater share of this asset. The trial court rejected this argument, finding that Husband's overall tax rate "accounts in part for [Husband's] other income, gains, losses, and exemptions independent of the deferred compensation distribution, and should not be taken into account when calculating the amount taxed on the deferred compensation disbursement alone."

Additionally, the trial court found that Husband's income had declined such that there was a significant variance, which constituted a material change in circumstances. With regard to Husband's obligation to pay private school expenses, the court found that Husband has the ability to pay these expenses and that it is in the best interest of the children for him to continue to do so. The court also found that "this voluntary support obligation is contractual in nature, resulting from the parties' Agreed Parenting Plan, and therefore this Court is not in a position to modify it." The court also found Husband in contempt for failing to pay alimony and child support and awarded Wife attorney's fees.

As ordered by the trial court, Husband filed a child support worksheet that was based on his reduced income. Wife objected to Husband's worksheet on the basis that it included alimony payments as Wife's income, imputed income to Wife without evidence of job opportunities in the area, and did not reflect the actual number of parenting days Husband spent with the children. The trial court adopted Husband's worksheet and set Husband's child support obligation at $776 per month.

Wife appealed arguing that the trial court erred in awarding her one-half of Husband's deferred compensation distribution reduced by 35% for estimated taxes, when his actual tax liability was less than 35%. Wife also asserted that it was in error for the court to continue to impute income to her for child support purposes.[1]

---

[1] Additionally, Wife argued that the trial court erred by: (1) failing to include the deferred compensation distributions as income to both parties for child support purposes; (2) failing to take into consideration Husband's income from his temporary work overseas; (3) including the alimony she received from Husband as part of her income; (4) failing to consider the actual number of days the children spent with Husband in calculating child support; (5) requiring Wife to seek judicial intervention if Husband refused to allow their daughter to continue attending her current private school; and (6) failing to grant her a security interest in Husband's assets to secure payment of alimony and child support.

(continued…)

- 3 -

In the second appeal, we held that the trial court failed to take into consideration Husband's actual income tax rate when awarding Wife an equal share (50%) of the deferred compensation benefits after taxes. *See Ghorashi-Bajestani v. Bajestani*, No. E2013-00161-COA-R3-CV, 2013 WL 5406859, at *11 (Tenn. Ct. App. Sept. 24, 2013) (hereinafter "*Bajestani II*"). Specifically, we found that Wife was not receiving 50%, after taxes, of Husband's annual deferred compensation, because Husband's actual tax rate was less than the amount being deducted from Wife's share.[2] On remand, the trial court was instructed to determine the correct tax rate for the years at issue and award Wife a judgment for the deferred compensation distributions, if any, she was entitled to receive but did not receive for each year. Additionally, we affirmed the imputation of income to Wife and the decision to not impute income to Husband.[3]

Following remand, Wife filed a petition to modify the award of child support asserting, *inter alia*, that Husband pled guilty to criminal behavior since the trial court's prior order; thus, there had been a material and substantial change in circumstances such that a significant variance would occur upon recalculation of support. Wife also argued that the trial court should no longer impute income to her and should recalculate child support after adjusting her income. She argued that, should the court continue to impute income to her, it should also consider work-related child care expenses in setting the amount of child support.

In his answer to this petition, Husband denied there had been a material change in circumstances and insisted there was no basis for modifying child support. Husband

---

Husband argued that the court erred by improperly valuing his deferred compensation account after his termination and by awarding Wife attorney's fees based on a finding of contempt.

[2] For example, assuming the gross amount of Husband's deferred compensation in one year was $100,000 and Husband's tax rate was determined to be 35% for that year, Wife would receive 65% of $50,000, resulting in a distribution to her of $32,500. However, if Husband's actual tax rate for that year was only 25%, not 35%, then Wife would have been entitled to receive $37,500, a difference of $5,000.

[3] Regarding the additional issues raised by the parties, we determined that the trial court erred in its child support calculation by failing to consider the appreciation in value of the parties' deferred compensation distributions and by failing to consider Husband's income from his overseas employment. Additionally, we concluded that the trial court erred by including Wife's alimony as income and by failing to consider the actual number of days Husband spent with the children. We found no error with the trial court's requirement that Wife seek judicial intervention should the parties be unable to reach an agreement regarding their daughter's school, with the court's decision not to grant Wife a security interest in Husband's assets, or with the court's valuation of Husband's deferred compensation. We also concluded that the trial court did not abuse its discretion in awarding Wife attorney's fees.

subsequently filed a counter-petition, asserting that he lacks the funds to pay for his children's private school tuition and asking to be relieved from this obligation.

In an order entered in June 2014, the trial court addressed the issues that had been remanded and the new claims by the parties. The trial court found that Husband's tax rate in 2011 was 30.28% and his gross deferred compensation was $1,343,476. Based upon these facts, the court determined that Wife should have received $468,335.75, one-half of Husband's 2011 after-tax deferred compensation income, but received only $436,629.81. Thus, the trial court awarded Wife a judgment against Husband for $31,705.91.

For 2012, the court found that Husband's tax rate was 22.32% and the gross deferred compensation was $370,340.88. Based upon these facts, the court determined that Wife was entitled to receive $147,336 but only received $135,169.95. Thus, the trial court awarded her a judgment against Husband for $12,168.16.

For 2013, the court found that Husband's tax rate was 21.73% and gross deferred compensation was $392,050.97. Based upon these facts, the court determined that Wife was entitled to receive $153,429.12 but only received $139,634. Thus, the trial court awarded her a judgment against Husband for $13,795.14.

As the tax rate for 2014 had yet to be established, the trial court ordered that, for each year going forward, Husband was to present Wife's counsel with evidence of the actual tax paid, in order to determine the proper distribution owed to Wife.

With regard to Wife's petition to modify child support, as a consequence of Husband's criminal charges, the court found that income should be imputed to him for child support purposes in the amount of $20,833.33 per month. The court declined Wife's request to discontinue imputing income to her and declined to impute work-related childcare expenses.

Regarding the children's private school, the trial court found that Husband is contractually obligated to pay for private school tuition. Although Husband presented evidence of a private school with lower tuition than the children's current school, the trial court found that it is in the best interests of the children to remain at their present schools.

In March 2015, Husband filed a motion pursuant to Tenn. R. Civ. P. 52.02 to amend the findings and conclusions appearing in the trial court's June 2014 order and to determine the appropriate tax rate for 2014. Husband argued that the trial court derived his "actual tax rate" by "dividing the total income tax . . . paid by Husband in a relevant year by the total income . . . for the same year." Husband contended that the proper method for determining the actual tax rate in a given year is to "divid[e] the tax . . . by the taxable income . . . to express, in terms of a percentage, the ratio between the two." Husband alleged that the method the trial court used resulted in a lower percentage of tax.

This method of calculation required Husband to share a higher portion of his deferred compensation than by using what Husband described as the proper method of calculating his tax rate. In support of this motion, Husband submitted an affidavit by Angela Dowis, a certified public accountant; however, at hearing on this motion, the trial court declined to rehear proof on the issue of Husband's deferred compensation.

Shortly thereafter, Husband filed a petition to modify the most recent order contending there had been a material and substantial change in circumstances with respect to Husband's obligation to pay private school tuition. Specifically, Husband alleged that his daughter had recently been expelled from her private school. He sought to modify his obligation to pay private school tuition by equitably apportioning the responsibility between the parents or, alternatively, for the court to deviate downward from the child support guidelines to reflect the inequitable burden on Husband to pay private school tuition for the children's elementary and secondary school education.

In October 2015, the trial court entered an order addressing the issues that had arisen since its June 2014 order. The court held that Husband's tuition obligation was contractual and that "[i]t is not the role of the courts to rewrite contracts for dissatisfied parties." Regarding Husband's tax rate, the court held that its calculations in the June 2014 order comply with the remand instructions; therefore, the trial court denied Husband's motion to amend. The court calculated Husband's tax rate on the deferred compensation for 2014 using the same method as the prior years and determined that Wife was entitled to a judgment of $4,224.56 against Husband.

Both parties raise issues for us to consider in this, the third appeal. Husband's issues are whether the trial court erred: (1) by holding that it lacked authority to modify Husband's obligation to pay private school tuition because it was a contractual obligation that he voluntarily assumed; (2) in defining the meaning of the term "tax rate"; and (3) by failing to admit the testimony of his expert witness, Angela Dowis. For her part, Wife contends Husband is barred from raising the private school tuition issue based on the law of the case doctrine. She also contends the trial court erred by continuing to impute income to her for child support purposes and declining to impute work-related childcare expenses. Additionally, Wife seeks an award of attorney's fees on appeal.

ANALYSIS

I. PRIVATE SCHOOL TUITION

Husband argues that the trial court erred in holding that it lacked authority to modify his obligation to pay private school tuition because this obligation was voluntarily assumed in the parties' parenting plan and was contractual in nature.

- 6 -

## A. Law of the Case

Before addressing the merits of Husband's argument, we must address, as a preliminary matter, Wife's argument that this issue is precluded by the law of the case doctrine.

Under the "law of the case" doctrine, "an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal." *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (citing *Life & Cas. Ins. Co. v. Jett*, 133 S.W.2d 997, 998–99 (Tenn. 1939); *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 90 (Tenn. App. 1996)). "The law of the case doctrine only applies to issues that were actually decided by the court—either explicitly or implicitly—but not to dicta." *In re Bridgestone/Firestone*, 495 S.W.3d 257, 266 (Tenn. Ct. App. 2015) (citing *Memphis Publ'g Co.*, 975 S.W.2d at 306; *Gray's Disposal Co., Inc. v. Metro. Gov't of Nashville*, 318 S.W.3d 342, 348 (Tenn. 2010)). This doctrine is neither a constitutional mandate nor an inflexible limit on the adjudicatory power of the courts; instead, "it is a longstanding discretionary rule of judicial practice reflecting the commonsense recognition that issues previously litigated and decided by a court of competent jurisdiction need not be revisited." *Gray's Disposal Co., Inc.*, 318 S.W.3d at 348 (internal citations omitted).[4]

*Bajestani I* and *II* are each previous appeals of the case currently before us. Therefore, they represent the law of the case with respect to the issues decided therein. However, in the prior appeals neither party raised the issue of whether the trial court may permissibly modify Husband's tuition obligation. Further, after carefully reviewing these opinions, we have determined that this court neither expressly nor implicitly decided this issue in either instance.[5] Thus, consideration of this issue is not precluded by the law of the case doctrine. *See Memphis Publ'g Co.*, 975 S.W.2d at 306.

---

[4] Exceptions to this doctrine include: (1) when the evidence offered following remand is substantially different from the evidence in the earlier proceeding; (2) when the prior decision was clearly erroneous and would result in manifest injustice if allowed to stand; or (3) when the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal. *Gray's Disposal Co., Inc.*, 318 S.W.3d at 348.

[5] Wife relies on our opinion in *Bajestani II*, wherein we affirmed the trial court's order requiring the parties to seek judicial intervention if they could not come to an agreement on which school their daughter would attend. However, that opinion did not address the question of whether Husband's tuition obligation is modifiable.

## B. Husband's Private Tuition Obligation

We will now examine Husband's contention that the trial court erred in concluding that it was without power to modify Husband's "contractual obligation" to pay private school tuition for the children's elementary and secondary school education.

In Tennessee, a trial court lacks the authority to order a parent to pay for the college education of a child who has reached the age of majority. *Corder v. Corder*, 231 S.W.3d 346, 356 (Tenn. Ct. App. 2006). A parent may assume such a duty by agreement, and an agreement to support a child beyond the age of majority will be enforced by the Tennessee courts. *See id.*; *Penland v. Penland*, 521 S.W.2d 222, 224 (Tenn. 1975). However, because such agreements are "outside the scope of the legal duty of support," they retain their contractual nature when incorporated into a final decree of divorce. *Gibbs v. Gibbs*, No. E2015-01362-COA-R3-CV, 2016 WL 4697433, at *5 (Tenn. Ct. App. June 22, 2016) (citing *Penland*, 521 S.W.2d at 224-25). Therefore, these agreements are not subject to modification by the court. *Id.*

On the other hand, private elementary or secondary education tuition is an "extraordinary educational expense" that may fall within a parent's duty to support his or her child in certain cases. *See Lubell v. Lubell*, No. E2014-01269-COA-R3-CV, 2015 WL 7068559, at *21 (Tenn. Ct. App. Nov. 12, 2015).[6] "When [parents] contract with respect to the legal duty of child support, upon approval of that contract, the agreement of the parties becomes merged into the decree and loses its contractual nature." *Penland*, 521 S.W.2d at 224. Therefore, unlike an agreement to pay college tuition, a parent's agreement to pay for private elementary or secondary education that has been incorporated into a divorce decree is subject to subsequent modification by the trial court. *See id*; *Kesser v. Kesser*, 201 S.W.3d 636, 642 (Tenn. 2006), *superseded by statute on other grounds*.[7]

---

[6] A trial court may award tuition for private elementary or secondary education as an "extraordinary educational expense" when the trial court finds that such a deviation from the parent's base child support award is in the best interests of the child. *Lubell*, 2015 WL 7068559, at *21 (citing Tenn. Comp. R. & Regs. 1240-02-04-.03(6)(b), 1240-02-04-.07(1)(b), 1240-02-04-.07(2)(d)); *see also Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006). The court "must consider whether the private elementary or secondary schooling is 'appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and the child were living together.'" *Velez v. Velez*, No. M2014-01115-COA-R3-CV, 2015 WL 3990705, at *8 (Tenn. Ct. App. June 30, 2015) (quoting Tenn. Comp. R. & Regs. 1240–2–4–.07(2)(d)(1)(ii)).

[7] Modification of an award of child support is governed by Tenn. Code Ann. § 36-5-101(g)(1). *See Muhlstadt v. Muhlstadt*, No. M2012-01267-COA-R3-CV, 2013 WL 3833563, at *2 (Tenn. Ct. App. July 19, 2013). Under this statute, "the court shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines . . . between the guidelines and the amount of support currently ordered . . . ." Tenn. Code Ann. § 36-5-101(g)(1).

The parenting plan, which was incorporated into the divorce decree, provides that Husband will "pay private school expenses [through] 12th grade." In March 2015, Husband filed a petition seeking to modify this obligation. The trial court denied this request, holding that Husband's tuition obligations are contractual in nature and not subject to modification.

Although a parent's agreement to pay for post-secondary education expenses is contractual in nature and not subject to modification by the trial court, this case involves Husband's agreement to pay for private elementary and secondary education. As described above, the trial court possessed the authority to order this type of support even without an agreement by the parents. Further, upon adoption of the parties' parenting plan into the trial court's final order of divorce, this support obligation merged into the divorce decree and lost its contractual nature. Accordingly, the trial court erred in holding that it was without power to modify Husband's private school tuition obligation.

For the foregoing reasons, we reverse and remand this issue to the trial court for a determination of whether modification of Husband's private school tuition obligation is warranted in this case and, if so, to what extent.

## II. CALCULATING THE "TAX RATE"

Husband contends the trial court erred in calculating the respective tax rates to be used to determine Wife's net share of the annual deferred compensation distributions. He also contends the court abused its discretion in refusing to consider expert testimony Husband sought to introduce after the court had calculated the tax rates and by denying his Tenn. R. Civ. P. 52.02 motion to amend the June 2014 order.

As we requested in *Bajestani II*, the trial court was to determine "if Wife is entitled to an award relative to previous deferred compensation distributions and establish appropriate measures to effectuate an equal distribution of the deferred compensation account, taking into consideration Husband's actual tax rate." Acting pursuant to our remand, the trial court conducted a hearing over two days in May and June 2014 ("the May 2014 hearing") to determine, *inter alia*, the respective tax rates to be used in calculating Wife's net share of the deferred compensation distributions in 2011, 2012, and 2013.

During the May 2014 hearing, the trial court heard testimony from Wife and Husband, and considered documentary evidence that included Husband's income tax returns for the years 2011, 2012, and 2013. For her part, Wife prepared and submitted a report reflecting calculations that specified the net share of the deferred compensation distributions she was entitled to receive. The tax rates and gross income used in Wife's calculations were derived from Husband's income tax returns for the three years at issue.

The document Wife introduced into evidence during her testimony was identified as Exhibit 30 and reads as follows:

**Deferred Compensation**

| | W-2 Gross | Masoud's Tax Rate | Total Owed to Maryam | Paid to Maryam | Balance Owed to Maryam | Interest at 5.25% | Total Judgment |
|---|---|---|---|---|---|---|---|
| 2011 | 1,343,476.33 | 30.28 | 468,335.75 | 436,629.91 | 31,705.84 | 4,161.40 | 35,867.24 |
| 2012 | 379,340.88 | 22.32 | 147,335.94 | 135,167.78 | 12,168.16 | 638.83 | 12,806.99 |
| 2013 | 392,050.97 | 21.73 | 153,429.14 | 139,634.00 | 13,795.14 | 724.24 | 14,519.38 |
| 2014 | 400,958.04 | Unknown | Unknown | 142,763.00 | unknown but >$14,873.65+ | 246.03 | Unknown+ |
| | | | | | | TOTAL | 78,067.26+ |

After Wife testified, Husband was called to the witness stand. He testified that his total income for 2011 was $1,444,362 and $437,398 was his total tax for that year. He also agreed that if you divide $437,398 by $1,444,362 the quotient is 30.28%, the tax rate Wife applied to determine her share for that year.[8] He admitted that his total income for 2012 was $879,433 and his total tax was $196,023. He also agreed if you divide the income by the tax, the quotient is 22.32%, the tax rate Wife applied to determine her share for that year. As for 2013, he agreed his total income was $484,201 and his total tax was $105,217, and if you divide the two, the quotient is 21.73%, the tax rate Wife applied to determine her share for that year. He also agreed that his W-2 gross income was correctly stated on Exhibit 30 and that the mathematical calculations on Exhibit 30 were accurate. The foregoing notwithstanding, Husband insisted this was not the proper way to calculate his tax rate. However, Husband did not introduce any evidence to support a finding that Wife's methodology was wrong or to support a finding that a different method was the only proper method to determine the tax rate.

Following the hearing, the trial court entered an order on June 30, 2014, in which it adopted Wife's proposed tax rates and her calculations of the amount of deferred compensation owed to her. Husband responded to the order by filing a Tenn. R. Civ. P. 52.02 motion to alter the tax rates used to calculate Wife's net share of the deferred compensation distributions for 2011, 2012, and 2013 and to amend the judgments rendered based on the "erroneous" tax rates. Husband additionally asked the court to consider expert evidence he proffered in support of the motion which he claimed to establish the proper method to calculate his tax rates.

The trial court denied husband's Tenn. R. Civ. P. 52.02 motion to amend the order and refused to consider the expert evidence proffered in support of the motion. On appeal, Husband contends both decisions were error. He also contends the trial court

_____

[8] "Quotient" is the number obtained by dividing one quantity by another. *See* American Heritage Dictionary of the English Language, Fifth Edition.

- 10 -

arbitrarily adopted Wife's proposed tax rates to calculate Wife's net share of the deferred compensation, which were not the correct tax rates; therefore, the resulting monetary judgments for 2011, 2012, and 2013 were in error.

We will first discuss the trial court's refusal to consider the expert evidence Husband proffered in support of his Tenn. R. Civ. P. 52.02 motion.

Whether to admit or exclude evidence is within the trial court's discretion and trial courts are "accorded a wide degree of latitude and will only be overturned on appeal where there is a showing of abuse of discretion." *Brandy Hills Estates, LLC v. Reeves*, 237 S.W.3d 307, 318 (Tenn. Ct. App. 2006) (quoting *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn.1993)). Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. *Id*. (citing Tenn. R. Evid. 103).

We find it significant that both parties had the right and the opportunity to introduce expert testimony during the May 2014 hearing. Neither party presented any expert proof at the May 2014 hearing. We must assume that each party's decision to not introduce expert evidence at this hearing was a strategic decision. It was not until after the trial court entered its order in June 2014 that Husband sought to proffer expert testimony on the tax rate issue by means of a Tenn. R. Civ. P. 52.02 motion.

During the hearing on the Rule 52.02 motion, Husband's counsel argued that the tax rate has a definition different than the one determined by the trial court and he wanted to present expert evidence to support his argument. In an exercise of its discretion, the trial court refused to consider Husband's belated proffer of expert testimony and Husband has failed to convince this court that the exclusion of this evidence constitutes an abuse of the trial court's broad discretion on evidentiary issues. Accordingly, we find no error with the decision to not consider the proffered evidence.

Whether to grant or deny a Tenn. R. Civ. P. 52.02 motion to alter or amend is a discretionary decision. *See Holladay v. Speed*, 208 S.W.3d 408, 415 (Tenn. Ct. App. 2005) (noting that a trial court's ruling on a Tenn. R. Civ. P. 52.02 motion to alter or amend is reviewed pursuant to the abuse of discretion standard). We also find no error with the trial court's discretionary decision to deny Husband's Rule 52.02 motion to amend because, *inter alia*, there is no evidentiary foundation to support altering or amending the order.

We now turn our attention to Husband's contention that the trial court erred by adopting Wife's proposed tax rates to calculate her net share of the deferred compensation because the method Wife employed to determine the tax rates was not the correct method.

Although Husband vigorously asserts that the method employed by Wife to determine Husband's tax rates for 2011, 2012, and 2013 was wrong, there is no evidence to support Husband's assertion. Moreover, there is no evidence to support a finding that the trial court erred by applying the tax rates Wife recommended. Further, Husband presented no evidence at the May 2014 hearing concerning the proper method or, for that matter, any method. We acknowledge that Husband's attorney argued at the May 2014 hearing that the trial court should calculate the tax rates using a different method, but he presented no evidence, lay or expert, to prove that a different method was the correct method or that Wife's method was wrong. To the contrary, Husband's attorney informed the court at the May 2014 hearing that "there is not a lot of point in me going through it with a bunch of paperwork to turn into exhibits." Thus, Husband provided no evidence to establish that the method used by Wife to determine the tax rates was wrong or that there was a more appropriate method.[9]

Therefore, the evidence does not preponderate against the method adopted by the trial court. After reviewing the testimony of the parties, Husband's tax returns, Wife's calculations based on this evidence, and Husband's admission that the financial information on her written report and her mathematical calculations were correct, we have also determined the evidence does not preponderate against the trial court's findings concerning Wife's share of the deferred compensation.

### III. IMPUTATION OF INCOME TO WIFE

Wife contends the trial court erred in continuing to impute income to her for child support purposes. Alternatively, she argues that the trial court erred by failing to consider

---

[9] The only "guidance" Husband's attorney gave the court in setting the correct tax rates for 2011, 2012, and 2013 appears in the following statement he made to the trial court during the May 2014 hearing:

> I want to go briefly to a couple other things now. One of them is the calculation of the money for the . . . short payment by my client of the deferred compensation. And I'm sorry, but I calculate things differently. And that's why I say I know the Court is going to be doing this and there is not a lot of point in me going through it with a bunch of paperwork to turn into exhibits. But if you take the -- take the line 20 -- line 37 income, which is the -- which is the adjusted gross, and you divide that into the line 72 income which is the amount of taxes that are -- pardon me -- the line 61 income which is the amount of taxes which ought to be paid, you have an actual tax rate.
>
> And when the Court does that for 2011, 2012, and 2013, the Court will find that, respectively, my client's actual tax rate was 39.98, 24.50, and 25.98. That's what we're going to ask the Court to do in making its finding of fact as to how this money shall be broken down.

work-related child care expenses in determining the amount of child support to be awarded.

The Tennessee Child Support Guidelines provide that income may be imputed to a parent when the court determines that the parent is voluntarily underemployed. *Wadhwani v. White*, No. M2015-01447-COA-R3-CV, 2016 WL 4579192, at *13 (Tenn. Ct. App. Aug. 31, 2016) (citing Tenn. Comp. R. & Regs. 1240-02-04-.04). The guidelines provide factors to be considered when determining whether a parent is willfully and voluntarily underemployed or unemployed. *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005). The factors include, *inter alia*, the parent's past and present employment; the parent's education, training, and ability to work; the parent's role as stay-at-home parent; and any additional factors deemed relevant to the particular circumstances of the case. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(iii).

The issue of voluntary underemployment is a question of fact that requires careful consideration of all the attendant circumstances. *Owensby v. Davis*, No. M2007-01262-COA-R3-JV, 2008 WL 3069777, at *4 (Tenn. Ct. App. July 31, 2008) (citing *Richardson*, 189 S.W.3d at 726). We afford the trial court considerable discretion in this determination. *Thayer v. Thayer*, No. M2015-00194-COA-R3-CV, 2016 WL 4056316, at *4 (Tenn. Ct. App. July 26, 2016) (citing *Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001)). "The trial court's decision is entitled to a presumption of correctness, particularly 'when it is premised on the trial court's singular ability to ascertain the credibility of the witnesses.'" *Id.* (citing *Reed v. Steadham*, No. E2009-00018-COA-R3-CV, 2009 WL 3295123, at *2 (Tenn. Ct. App. Oct. 14, 2009)).

In this case, Wife filed a petition in October 2013 alleging that there had been a material and substantial change in circumstances such that a significant variance would occur upon recalculation of child support. Specifically, she alleged that Husband pled guilty to federal criminal charges and, as a result, income should now be imputed to Husband. She also alleged that she has continued to seek employment without success; thus, income should no longer be imputed to her for child support purposes. She argued that, should the court continue to impute income to her, it should also consider her work-related child care expenses when setting the amount of income to be imputed.

After conducting an evidentiary hearing, the trial court issued its order in June of 2014 holding that it would begin imputing income to Husband due to his criminal conviction. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(ii)(I)("[C]riminal activity and/or incarceration shall result in a finding of voluntary underemployment or unemployment. . . ."). In the same order, the court declined Wife's request to stop imputing income to her or to adjust the amount of imputed income to reflect work-related childcare expenses. In so doing, the court reasoned as follows:

The Court originally imputed income to [Wife] in its April 16, 2009 Findings of Fact and Conclusions of Law. In those Findings of Fact, the Court stated:

> H. [Wife] is a licensed civil engineer with a baccalaureate degree.
>
> I. [Wife] speaks three languages, has no physical or mental limitations, and is capable of working.
>
> J. [Wife's] last salary was $44,000 a year in 2001 for Alstom Power. . . . This was her first job as a civil engineer after obtaining her degree.
>
> K. [Wife] is capable of earning between $72,000 and $80,000 a year in the Chattanooga area.
>
> L. There are positions paying these starting salaries in the Chattanooga area; such positions have been available for the last few years and would not be under the supervision or control of [Husband].
>
> M. [Wife] has refused to return to work or seek work during the pendency of this divorce. However, she is aware that there are positions available for her to work in the field in which she is trained.

. . . .

In the present proceeding, [Wife] presented evidence attempting to show that she has been looking for, but has been unable to secure employment. The Child Support Guidelines establish factors for a Court to consider when considering whether to find a parent is willfully and voluntarily underemployed or unemployed.

. . . .

The Court analyzes these factors as follows. The first factor is the parent's past and present employment. [Wife] is a licensed civil engineer with a baccalaureate degree who worked as an engineer prior to leaving the work force. . . . This factor weighs in favor of continuing to impute income to [Wife]. The second factor is the parent's education, training, and ability to work. [Wife] earned a Bachelor of Science in Civil Engineering in 2001.

- 14 -

The Court was not presented with any evidence regarding her physical inability to work. Therefore, this factor weighs in favor of imputing income to [Wife]. The third factor relates to the role of a stay-at-home parent, which [Wife] has been since 2001. [Wife] did act as a full-time caretaker while she and [Husband] were married. She has been out of the workforce and acting as a stay-at-home caretaker since 2001. Her son is in elementary school and her daughter is in middle school. Therefore, this factor weighs in favor of not imputing income to [Wife].

After weighing all the factors, as well as considering credibility issues, the Court finds that it continues to be appropriate under the Guidelines to impute income to [Wife]. Although [Wife] presented some evidence regarding her job search and testified about that job search, the Court was not persuaded that her job search has been diligent. Although [Wife's] role as a stay-at-home-parent weighs in favor of not imputing income to [Wife], that factor does not outweigh the other two factors because [Wife's] history of education and training are given great weight by the Court. Additionally, her children are now older and in school, and therefore require less caretaking than very young children. Therefore, the Court . . . denies [Wife's] request to stop imputing income to her for child support purposes.

. . . .

[Wife] asserts that if this Court continues to impute income to her, the Court should also impute . . . work-related childcare expenses she would incur if she was working. [Wife] asserts the children would need ten hours of childcare per week at a rate of $10.00 per hour, or $100.00 per week, during the school year. [Wife] asserts the children would need to attend summer camps during the week which average to $150.00 per child, or $600.00 per month. These amounts seem reasonable to the Court; however, the Court was presented with no testimony or other evidence about the potential costs of childcare incurred by [Wife] if she were to return to the workforce. Therefore, [Wife's] request to impute her work-related childcare expenses is denied.

Having reviewed the record, we conclude that the evidence does not preponderate against the trial court's factual findings regarding Wife's voluntary underemployment. Importantly, although Wife testified that she has actively sought employment and has been unsuccessful in finding a job, the trial court stated that it "was not persuaded that her job search [had] been diligent." This credibility determination is entitled to great deference on appeal and we will not re-evaluate this assessment absent "clear and convincing evidence to the contrary." *See Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779,

- 15 -

783 (Tenn. 1999). Wife has not presented any such evidence. Therefore, we affirm the decision to continue imputing income to Wife.

Wife also contends the trial court erred in declining to modify the child support award to include Wife's work-related childcare expenses. Although the Child Support Guidelines state that work-related childcare expenses shall be included in the calculations to determine child support, *see* Tenn. Com. R. & Regs. 1240-02-04-.04(8)(a)(1), Wife is not incurring childcare expenses. Further, the only evidence presented by Wife with regard to her potential childcare expenses was vague and unspecific. Therefore, the evidence does not preponderate against the trial court's ruling on this issue.

IV. ATTORNEY'S FEES ON APPEAL

Wife seeks to recover the attorney's fees incurred on appeal. Whether to award attorney's fees on appeal is a matter within the sole discretion of this court. *Wills v. City of Memphis,* 457 S.W.3d 30, 51 (Tenn. Ct. App. 2014) (citing *Archer v. Archer,* 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). When considering a request for attorney's fees, we will consider "the requesting party's ability to pay, the requesting party's success on appeal, whether the appeal was taken in good faith, and any other relevant equitable factors." *Culbertson v. Culbertson*, 455 S.W.3d 107, 158 (Tenn. Ct. App. 2014) (citing *Moran v. Willensky*, 339 S.W.3d 651, 666 (Tenn. Ct. App. 2010)). After weighing these factors, we exercise our discretion to respectfully deny this request.

IN CONCLUSION

The judgment of the trial court is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion. Two-thirds of the costs of appeal are assessed against Husband and one-third are assessed against Wife.

_____
FRANK G. CLEMENT, JR., P.J., M.S.